981 So.2d 717 (2008)
STATE of Louisiana
v.
Cedric A. WOODFORK.
No. 2007-KA-1396.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2008.
*718 Keva Landrum-Johnson, District Attorney, David S. Pipes, Assistant District Attorney, New Orleans, LA, for Appellee.
Sherry Watters, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
On 3 May 2006, the state charged Cedric A. Woodfork ("Woodfork") with one count of possession of cocaine. At his arraignment on 22 June 2006, Woodfork pled not guilty. On 31 October 2006, a six-person jury found him guilty as charged. The state filed a multiple bill on 20 November 2006, and the matter was reset several times for a hearing on the bill. On 23 March 2007, the court sentenced Woodfork as a first offender to three years at hard labor, suspended, and placed him on three years active probation with various conditions. The court also reset the multiple bill hearing, but the state withdrew it on 15 May 2007. On 26 March 2007, the court granted Woodfork's appeal. On May 15, the State withdrew the multiple bill.
Facts
At approximately 10:15 p.m. on 12 March 2006, Officers Antonio Sosa ("Sosa") and Raymond Martinez ("Martinez") were on patrol in the Sixth District of New Orleans. As they approached the corner of Simon Bolivar Avenue and Second Street, they saw a car speeding down Simon Bolivar. They turned onto Simon Bolivar and followed it a short distance. They activated their lights and siren, and the car immediately pulled into a parking lot at the corner of Jackson Avenue and Simon Bolivar. Sosa testified that he and his partner exited their car and walked up to the suspect car, with Sosa on the driver's side and Officer Martinez on the passenger side. Sosa testified that he asked the driver, Woodfork, for his driver's license, the car's registration, and proof of insurance. He stated that Woodfork told him that he did not have his license with him and that the car was not his. Sosa stated that he ordered Woodfork out of the car, and when Woodfork exited, a small package fell from his waist area. Sosa testified that he signaled to his partner, who took charge of Woodfork. He then retrieved the package that fell and found it to be what appeared to be crack cocaine wrapped in plastic. The officers arrested Woodfork, and in a search incidental to his arrest they found in his pocket three more bags containing crack cocaine. Sosa stated that they also issued Woodfork a traffic *719 citation for speeding and driving without a driver's license.
Martinez's testimony concerning the incident basically tracked that of Sosa. In addition, he testified that when Woodfork exited his vehicle, Sosa signaled to him and he handcuffed Woodfork. Sosa handed Woodfork to him and then retrieved the object from the ground. Martinez testified that the search incidental to Woodfork's arrest revealed three more rocks of cocaine. He stated that although one of the rocks had disintegrated into powder by the time of trial, he and his partner seized no powdered cocaine. He described the rocks of crack cocaine as big slabs. He testified that a female passenger was in the car with Woodfork, but she was released after the stop.
The parties stipulated that the substance seized from Woodfork tested positive for cocaine.
The defense called only Martinez, eliciting the fact that at an earlier hearing he testified that the cocaine was seized from Woodfork's left coat pocket, while at trial he testified that it came from Woodfork's left front pants pocket.
A. Errors Patent
A review of the record reveals no patent errors.
B. Assignment of Error
In his sole assignment of error, Woodfork contends that the trial court should have granted a mistrial during the state's closing argument due to the prosecutor's reference to the appellant's failure to testify. The comment to which Woodfork refers occurred during the state's rebuttal argument, when the prosecutor, referring to the cocaine, stated: "It came from that defendant, Cedric Woodfork. There is no evidence put on by the Defense that he did not possess cocaine." Defense counsel immediately objected, noting that the defense had no obligation to put on any evidence. The court interrupted counsel, indicating that it would sustain the objection. Appellate counsel now argues that the sustaining of the objection was not sufficient, and the court should have granted a mistrial.
In State v. Clark, 01-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183, this court set forth the standard for determining whether a prosecutor's remarks are so prejudicial as to warrant a new trial:
The scope of closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice. The state's rebuttal shall be confined to answering the argument of the defendant." La.C.Cr.P. art. 774. Prosecutors may not resort to personal experience or turn argument into a plebiscite on crime. State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716. However, prosecutors have wide latitude in choosing closing argument tactics. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036, citing State v. Martin, 539 So.2d 1235, 1240 (La.1989) (closing arguments that referred to "smoke screen" tactics and defense as "commie pinkos" were deemed inarticulate but not improper). Further, the trial judge has broad discretion in controlling the scope of closing arguments. Id. Even if the prosecutor exceeds the bounds of proper argument, a reviewing court will not reverse a conviction unless "thoroughly convinced" that the argument influenced the jury and contributed to the verdict. State v. Ricard, 98-2278, p. 4 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. Even *720 where the prosecutor's statements are improper, credit should be accorded to the good sense and fairmindedness of the jurors who have heard the evidence. Williams, supra; Ricard; supra.

Here, Woodfork argues that the prosecutor's statement was a comment on his failure to testify, and as such the trial court should have declared a mistrial. La. C.Cr.P. art. 770(3) provides in part that one basis for the granting of a mistrial is where a district attorney refers directly or indirectly to the failure of a defendant to testify in his own defense. However, Woodfork's claim fails for two reasons. First, the comment was not necessarily an indirect comment on his failure to testify. The Louisiana Supreme Court held in State v. Mitchell, 00-1399 (La.2/21/01), 779 So.2d 698, that an indirect reference to the failure to testify that mandates the granting of a mistrial occurs where the focus is on the accused's failure to testify, such as when he is the only witness who can rebut the state's evidence. However, if another witness who could have testified on the accused's behalf exists, the indirect reference does not focus on the accused's failure to testify, and a mistrial is not warranted. See also State v. Jackson, 454 So.2d 116 (La.1984); State v. Brown, 96-0954 (La.App. 4 Cir. 4/2/97), 692 So.2d 735. In the case at bar, a female passenger in the car when Woodfork was arrested could have potentially rebutted the officers' testimony. Thus, the statement was not an indirect comment on Woodfork's failure to testify that would have entitled him to a mistrial.
Secondly, the trial court did not err in failing to grant a mistrial because Woodfork did not request one as required by C.Cr.P. art. 770.[1] By sustaining the appellant's objection to the prosecutor's statement, the trial court granted the only relief requested by the appellant. However, as discussed above, even if counsel had requested a mistrial, the court would not have abused its discretion by failing to grant one. This assignment has no merit.
Conclusion
Accordingly, we affirm Cedric A. Woodfork's conviction and sentence.
AFFIRMED.
NOTES
[1] See State v. Harrell, 07-0202 (La.App. 4 Cir. 8/1/07), 965 So.2d 479; State v. Martello, 98-2066 (La.App. 4 Cir. 11/17/99), 748 So.2d 1192; State v. Cager, 97-1877 (La.App. 4 Cir. 3/24/99), 732 So.2d 97.